Tubeey, J.
delivered the opinion of the court.
On the 1st day of March, 1837, the defendant sold to complain *124 ant one hundred and fifty acres of land for two hundred and eighty-five dollars, and executed his bond, binding himself to convey to the complainant a good and valid title in fee-simple to the same by the 20th day of April, 1837. Complainant has paid $210 of the purchase money, leaving a balance of $75 due, for which he gave defendant his note. Defendant having failed to convey to the complainant at the time specified, this bill is filed for a specific execution of contract. This, defendant resists upon the ground as al-ledged in his answer, that after the making of the contract it was rescinded by parol, by the mutual agreement of the parties. The question of law, that is argued mainly in the case, is, whether a parol recision of a contract can be set up in equity to defeat an application for a specific performance. That it can be done when the parol recision is clearly and satisfactorily established, is certain. See. Sugden on vendors, 101, and references. But the principal question in this case, and the one on which it turns is, whether there is any satisfactory proof that the contract has been rescinded : .and we are most clearly of the opinion, that there is none. The defendant’s answer itself, makes out nothing more, when properly examined, than an executory contract to rescind, the condition of which on his part he never performed. He says in substance, that after the contract to sell the land was made, and the $210 were paid, the complainant became doubtful of his title to the premises, and they mutually agreed that the contract should be rescinded upon his paying him back the money he had received, and delivering up the note which he held upon complainant for the balance of the purchase money; that he was to execute to complainant his note for the payment received with interest, and was to deliver up to a third person, the note for the balance of $75: that he did deliver up to the third person the note specified, and was about to execute his own notes as agreed upon, when complainant learning that he held a claim upon A. O. P. Nicholson for a sum nearly equal to the amount to be paid, was anxious to have said Nicholson for his paymaster, to which ‘ he agreed: that complainant called upon Nicholson, who promised to pay him, with which complainant expressed himself satisfied, and told him that he need put himself to no further trouble about it, whereupon he deposited $10, the balance to make Nicholson’s note equal to the demand of the complainant’s, together with the seventy-five dollar note in the hands of the third person referred to, and [the complainant at the *125 same time deposited in the hands of the same persón the bond fot the title, and he considered the contract rescinded. Whether this contract of rescission was executed or not, depends upon the question of who was to be responsible for Nicholson’s failure to pay his note, the complainant or defendant; if the complainant took it in absolute discharge of so much of his debt, agreeing to risk the payment, then the contract was executed, there remaining no more to be done; but if he took it only as a means through which he might get the money due by the defendant, and the defendant was to be responsible for Nicholson’s payment, then the contract was not executed until the money was paid, which having never been done, the contract would remain executory; and that the defendant was to remain responsible, his answer clearly shows. If the complain-1 ant agreed to take Nicholson’s note in absolute discharge of so much of his demand, why the necessity of depositing the $10, the $75 note and the bond for title in the hands of the third person? if there were nothing more to be done, if the defendant was not to remain responsible, why not have paid the ten dollars to the plaintiff, delivered up to him his note, and taken up his own bond ? The transaction between them would have been at an end; but if we were left doubtful from the answer, that this is the true state of the case, all doubt will be removed by the examination of the testimony of E. W. Dale, the third person spoken of in the answer, with whom the deposit was made. He says, that some time in the year 1837, complainant and defendant came to him and informed him, that they were about rescinding a contract for land previously sold by the defendant to the complainant, and requested him to draw two notes, one for one hundred dollars, the other for one hundred and ten dollars, payable in March,* that the notes were drawn, but not signed, and were left in his hands until the complainant should deposit with him the title bond of defendant, and the defendant the note of the complainant; that the title bond and note were deposited accordingly, but the defendant declined signing the notes, stating that he had a claim of two hundred dollars on A. O. P. Nicholson, which he would give in lieu of the notes to complainant, and at the same time handed him ten dollars in money, which he directed him to pay over to complainant when Mr. Nicholson should have paid the two hundred dollars; that the money, title bond and note remained in his possession after March, 1838, during which *126 time defendant frequently called and enquired if Nicholson had settled the two hundred dollars with complainant. -
There can be no doubt then left, that defendant was liable for Nicholson’s defalcation; the money has never been paid him; the defendant has always refused to pay it to him himself. Then here is a contract to rescind upon the repayment of the purchase money, or the execution of notes by the defendant therefor, neither of which has ever been done; the contract then is not executed, but execu-tory, and as such no bar to the complainant’s right to relief.
The decree of the chancellor will be reversed, and a specific execution of the contract decreed here.